UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Parvez & Razia Yazdani<br><br>              **Plaintiffs**<br>     v.<br><br>BMW of North America, LLC<br>And BMW Motorrad USA, a Division of<br>BMW of North America, LLC<br><br>              **Defendants** | Civil Action No:  2:15-cv-01427-PD |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT, BMW OF NORTH AMERICA, LLC'S MOTION *IN LIMINE* TO PRECLUDE CERTAIN TESTIMONY OF PLAINTIFF'S EXPERT WILLIAM VIGILANTE, JR.**

Plaintiffs, Parvez & Razia Yazdani, by and through their attorneys, DE LUCA LEVINE, LLC, herein file this Response in Opposition to Defendant, BMW of North America, LLC's Motion *in Limine* to Preclude Certain Testimony of William Vigilante and rely on the Memorandum of Law attached in support thereof.

**WHEREFORE** Plaintiffs respectfully request this Court deny Defendant's Motion *in Limine* to Preclude Certain Testimony of Plaintiffs' Expert William Vigilante, Jr.

                                                                  Respectfully submitted,

                                                                  de LUCA LEVINE, LLC

BY: *Patrick A. Hughes*

                                                                  RAYMOND E. MACK, ESQUIRE
                                                                  I.D. No.: 91815
                                                                  rmack@delucalevine.com
                                                                  PATRICK A. HUGHES, ESQUIRE
                                                                  I.D. No. 91415
                                                                  phughes@delucalevine.com
                                                                  Three Valley Square
                                                                  512 East Township Line Rd, Ste. 220
                                                                  Blue Bell, PA  19422
                                                                  215-383-0227 (Direct)/ 215-383-0082 (Fax)
                                                                  Attorneys for Plaintiffs

**Dated:**  May  9, 2016

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **Parvez & Razia Yazdani**<br><br>    **Plaintiffs**<br>  **v.**<br><br>**BMW of North America, LLC**<br>**And BMW Motorrad USA, a Division of**<br>**BMW of North America, LLC**<br><br>    **Defendants** | **Civil Action No: 2:15-cv-01427-PD** |

**PLAINTIFFS' MEMORADUM OF LAW IN SUPPORT OF THEIR RESPONSE IN OPPOSITION TO BMW OF NORTH AMERICA, LLC'S MOTION *IN LIMINE* TO PRECLUDE CERTAIN TESTIMONY OF PLAINTIFF'S EXPERT WILLIAM VIGILANTE, JR.**

Plaintiffs, Parvez & Razia Yazdani, by and through their attorneys, DE LUCA LEVINE, LLC, herein file this Memorandum of Law in support of their Response in Opposition to BMW of North America, LLC's ("BMWNA's") Motion *in Limine* to Preclude Certain Testimony of William Vigilante, and in support thereof, avers as follows:

## I.  STATEMENT OF FACTS

The instant action arises out of a fire that originated at a 2004 BMW R1150R motorcycle ("subject motorcycle") distributed by BMWNA. On the day of the fire, Mr. Yazdani started his motorcycle to warm up the engine. He let the motorcycle idle in a stationary position for approximately 30 minutes, which caused the oil level sight glass located on the motorcycle's crank case to melt. Once the oil level sight glass melted, engine oil leaked onto the exhaust system and ignited. The subject motorcycle was parked in the Yazdanis' garage when the fire occurred and quickly spread throughout the Yazdani home causing substantial property damage. Plaintiffs contend that the subject motorcycle is defective in both design and warning and initiated this action to recover for the damages sustained in the February 25, 2013 fire.

This subject motorcycle has a unique and atypical hazard because it combines an air cooled engine with an oil sight glass (instead of a dip stick) located on the engine's crank case that can fail when exposed to foreseeable temperatures of the engine oil. Plaintiffs' mechanical consultant, Michael Zazula, concludes that the subject motorcycle should have been sold with a liquid cooled engine (instead of an air-cooled engine), or a dipstick (in lieu of the plastic oil sight glass), or with an optional police fan kit already sold as an accessory for the subject motorcycle by BMW. *See Exhibit A, Report of Michael Zazula, at p. 5-6.* Each of the design alternatives proposed by Zazula are designs already employed by BMW in other models, or in the case of the police fan kit, sold as an after-market accessory.

Plaintiffs' Human Factors expert, Dr. Vigilante, concludes that since BMWNA chose to eschew a design change to eliminate the hazard caused by the melting oil sight glass, then to render the product safe, it needed to have adequately warned the rider of the critical safety information about this severe hazard. Here, in order to properly convey critical safety information – where the potential for harm is severe and where the common user is unlikely to know of the risk – BMWNA needed to place a warning on the motorcycle in a location relevant to catch the user's attention at the moment critical to convey the information. BMWNA's failure to eliminate the fire hazard through design and failure to properly warn against this unique and typical fire hazard renders the subject motorcycle defective. *See Exhibit B, Report of Dr. Vigilante.*

## II.  LEGAL ARGUMENT

The admissibility of an expert witness is governed by Federal Rule of Evidence 702. "The Third Circuit has emphasized that not only do the Rules of Evidence generally 'embody a strong preference for admitting any evidence that may assist the trier of fact,' but Rule 702 specifically 'has a liberal policy of admissibility.'" *Dalton v. McCourt Elec. LLC*, 112 F. Supp. 3d 320, 324-26

(E.D. Pa. 2015) (quoting *Pineda v. Ford Motor Co.,* 520 F.3d 237, 243 (3d Cir.2008) (quoting *Kannankeril v. Terminix Int'l, Inc.,* 128 F.3d 802, 806 (3d Cir.1997))).

"As to the 'qualification' prong, [the Third Circuit has] 'eschewed imposing overly rigorous requirements of expertise and have been satisfied with more generalized qualifications.'" *United States v. Fleet Mgmt., Ltd.*, 332 F. App'x 753, 757 (3d Cir. 2009) (quoting *In re Paoli Railroad Yard PCB Litig.,* 35 F.3d 717, 741 (3d Cir.1994)). "[A] broad range of knowledge, skills, and training qualify an expert." *Pineda*, 520 F.3d at 244. "It is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Id.* (quoting *Holbrook v. Lykes Bros. S.S. Co.,* 80 F.3d 777, 782 (3d Cir.1996)). The minimum level of qualifications of an expert is that their "skill or knowledge" be "greater than the average layman with regard to the scientific matter at issue." *Elcock v. Kmart Corp.*, 233 F.3d 734, 742, (3d Cir. 2000).

Defendant argues, that since Dr. Vigilante is not a motorcycle design expert, that he should be precluded from offering any testimony regarding the design of the subject motorcycle. First, Defendant would have each expert assigned a specific label and have their testimony boxed in according to the label as it sees fit. However, this approach ignores the reality that, in the product design industry, fields and expertise overlap and professionals of varying backgrounds work together to alleviate design defects using different methods.

Vigilante describes the Human Factor field as follows: "a science that studies how people interact with their use of all different types of products, machines, systems and environments. And what we're interested from the human factors side is the person that's using the products. We're interested in their perceptual abilities that is their ability to see, hear and capture information from

the environment, how they process that information and make decisions. How things such as expectancies and prior experiences affect how we perceive things and how we make decisions. And then we as a field in a professional's work with engineers, designers and architects to design products, machines and systems that are easy to use, that are efficient to use and most importantly are safe to use." *See Exhibit C, Dr. Vigilante Dep. Tr., at p. 9:6-10:5.*

Accordingly, in the field of Human Factors, the design of a product and the adequacy of any warnings are inextricably intertwined. Dr. Vigilante's explains that research in his field states that a defective product should be made safe according to the "safety hierarchy." When a product hazard is known to a manufacturer, the safety hierarchy instructs that manufacturers have three choices to alleviate the danger: change the design to eliminate the hazard, guard against the hazard, and, as a last and least effective resort, adequately warn the user. *See Exhibit C, Dr. Vigilante Dep. Tr., at pp. 157:17-24; 204-209.*

If a product contains a hazard that the manufacturer cannot or is unwilling to alleviate *via* design change or guard (like the subject motorcycle here), then the product should at least adequately warn the user of the danger. *See Exhibit C, Dr. Vigilante Dep. Tr., at pp. 204-209.* Then one must examine the nature of the hazard to prioritize the warnings based on the severity of harm and likeliness that the common user would be aware of the harm posed by the hazard, and decide where the warning should be shown. *See Exhibit C, Dr. Vigilante Dep. Tr., at pp. 204-209.* Some warnings can be adequately placed in the manual, whereas others should be on the product. *See Exhibit C, Dr. Vigilante Dep. Tr., at pp. 204-209.* As his research shows, warnings that convey critical safety information – where the potential for harm is severe and where the common user is unlikely to know of the risk – should be placed in a location on the product relevant to catch the

user's attention at the moment critical to convey the information.  *See Exhibit C, Dr. Vigilante Dep. Tr., at pp. 204-209.*

As this testimony implies, Dr. Vigilante cannot adequately explain his opinion that the warning in the manual is inadequate, and should have been placed on the product itself, without speaking as to the design and defect of the subject motorcycle (i.e., failure of the oil sight glass at foreseeable engine temperatures) of the subject motorcycle.  The case of *Robertson-Armstrong v. Robinson Helicopter Co., Inc.*, illustrates this point.  In *Robertson-Armstrong*, a biomechanics expert was allowed to opine on proposed alternative designs to a defective helicopter that injured plaintiffs.  No. CV 13-2810, 2015 WL 7294823, at *3 (E.D. Pa. Nov. 19, 2015).  A biomechanics expert looks at how a human body interacts physically with a product.  Like Human Factors experts, the Court noted that "[i]t is common practice for biomechanics experts to take design and crashworthiness factors into consideration in forming their opinions."  *Id.*   Further, the Court stated that the analysis of the injuries and of the product design "cannot occur in a vacuum." *Id.*

Similarly, Dr. Vigilante's analysis regarding the product user's interaction with the subject motorcycle does not occur in a vacuum, but is informed by the design of the motorcycle itself.

Second, as Dr. Vigilante testified repeatedly at his deposition, he does not plan to offer any independent opinion on the proposed alternative designs proffered by Michael Zazula.  *See Exhibit C, Dr. Vigilante Dep. Tr., at pp. 78-96.*  As is common in the industry, Dr. Vigilante normally works with and relies on the work of other experts, like Michael Zazula, to aid his opinion.   To the extent that Dr. Vigilante did offer his opinions at his deposition, it was only after Defendant asked.  Furthermore, Dr. Vigilante clarified multiple times in his deposition that he was relying on Defendants corporate witness Mark Yeldham and/or Plaintiffs' expert Michael Zazula, to identify

the fire hazard created by the defective design of the oil sight glass and the feasibility and availability of alternative design and guarding solutions.

The *Kerrigan* case cited by Defendant is inapposite because it does not involve a Human Factors expert opining on proposed alternative designs. *Kerrigan v. Maxon Industries*, 223 F. Supp. 2d 626, 634-40 (E.D. Pa. 2002). Further, the proposed alternative designs in *Kerrigan* dealt with complex issues that went to the "formulation and function" of the product. *Id.* at 635-37. The Court stated that it was a "leap" for a non-design expert to comment on such proposed alternative designs, and distinguished itself from another case, *Hammond v. International Harvester Company,* 691 F.2d 646 (3d Cir.1982). In *Hammond*, due to the simplistic nature of the proposed design alternatives, the expert did **not** need design experience to form an opinion on them. *Id.* Rather, his generalized experience was sufficient.

Similar to *Hammond*, here, the proposed alternative designs are common-sense preventative measures that deal with general design changes and after-market accessories already manufactured and sold by Defendant. It is not a leap for a professional in Dr. Vigilante's field and with his experience for him to opine that Zazula's proposed changes would be adequate to address the design defect that creates this fire hazard.

Further, the case of *Miller v. Gray Mfg. Co., Inc.*, is on point. No. CV 14-5444, 2015 WL 5000988, at *4-5 (E.D. Pa. Aug. 20, 2015). In *Miller*, a Human Factors expert was allowed to opine that, based on the above mentioned safety hierarchy design principle, that the subject floor jack was defective because it could have been designed "so that it would not fit under a vehicle or providing a handle extension so that the jack could be operated outside the perimeter of the vehicle." *Id.* Similar to Dr. Vigilante, the expert normally relied on someone with more of a mechanical engineering background to assist in his investigation. *Id.* The Court noted that the

specific expert had already been admitted to testify as to design defects and proposed alternative designs in the prior cases. Accordingly, the Court found the expert qualified and noted that any questions as to his qualifications to give an opinion on proposed alternative designs was best left to cross examination.

Similar to *Miller*, Dr. Vigilante is a Human Factors expert who relies on the opinions of an expert with a mechanical engineering consulting background to opine that common-sense, simplistic design changes would have alleviated the design defect of the subject motorcycle. Accordingly, any questions regarding his qualifications to make such conclusions are best left for cross examination, and do not affect the admissibility of his testimony.

### III. CONCLUSION

For the reasons expressed above, Plaintiff respectfully requests this Honorable Court deny Defendant's Motion *in Limine* to Preclude Certain Testimony of Plaintiff's Expert William Vigilante.

Respectfully submitted,

**de LUCA LEVINE, LLC**

BY: *Patrick A. Hughes*

RAYMOND E. MACK, ESQUIRE
I.D. No.: 91815
rmack@delucalevine.com
PATRICK A. HUGHES, ESQUIRE
I.D. No. 91415
phughes@delucalevine.com
Three Valley Square
512 East Township Line Rd, Ste. 220
Blue Bell, PA  19422
215-383-0227 (Direct)
215-383-0082 (Fax)
Attorneys for Plaintiffs

Dated: May 9, 2016