TLR

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PARVEZ & RAZIA YAZDANI, :
           Plaintiffs, :     CIVIL ACTION
            :
    v. :
            :
BMW OF NORTH AMERICA, LLC, and :     No. 15-01427
BMW MOTORRAD USA, a Division of :
BMW OF NORTH AMERICA, LLC :
           Defendants. :

FILED
MAY 26 2016
MICHAEL E. KUNZ, Clerk
By _____ Dep Clerk

## ORDER

AND NOW, on May 25, 2016, upon consideration of the parties' motions in limine and responses, it is ORDERED:

1.     Defendant BMW of North America, LLC and BMW Motorrad USA's (collectively, "BMW") Motion in Limine to Preclude Certain Testimony of Plaintiffs' Expert Michael Zazula (doc. 23) is GRANTED. Based on his experience in mechanical engineering, fire investigations, and motorcycle and vehicle maintenance, Zazula can opine about the cause of the fire and the functioning of Plaintiff Parvez Yazdani's R1150 model motorcycle (the "motorcycle"). See Response (doc. 40), Ex. C, M. Zazula Curriculum Vitae; Motion, Ex. B, 3/29/2016 M. Zazula Dep. 7-12, 26; see also Motion at 5 (agreeing Zazula can opine about cause of fire and motorcycle functioning). However, because Zazula does not have specialized knowledge concerning the design of motorcycles, he cannot offer opinions about alternative designs for the motorcycle.[1] See Motion, Ex. A, M. Zazula Report at 5 (opining about how BMW

---

[1]   The Yazdanis argue Zazula has design expertise based on his experience as a product analysis engineer. See Response at 5. Zazula, however, testified that he did not design products in that position; rather, he would inform the designers about his observations as to how a product failed. See Motion, Ex. B, 3/29/2016 M. Zazula Dep. at 26-28. The Yazdanis also contend Zazula can opine about alternative designs because they are common sense safeguards and undisputed by BMW's expert, Kevin Breen. See Response at 5-6. But Zazula's testimony

could and should have designed the motorcycle), Ex. B, 3/29/2016 M. Zazula Dep. at 40-41 (he is not an expert in the design of motorcycles); In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994) ("witness proffered to testify to specialized knowledge must be an expert"); Kerrigan v. Maxon Industries, Inc., 223 F. Supp. 2d 626, 635 (E.D. Pa. 2002) (although witness may qualify as expert based on variety of experiences and training, witness must have experience and training on subject matter of particular opinion to be offered).[2]

Zazula also shall be precluded from testifying about "internet reports of BMW air-cooled motorcycles that have caught fire while idling during traffic stops," M. Zazula Report at 5, unless he establishes that experts in his fields would reasonably rely on such reports. See M. Zazula Dep. at 91-92 (internet reports consist of BMW blogs); Motion, Ex. D, List of websites; see also Fed. R. Evid. 703 (expert may rely on inadmissible data if experts in particular field would reasonably rely on such data); Loussier v. Universal Music Grp., Inc., No. 02-2447(KMW), 2005 WL 5644421, at *5 (S.D.N.Y. July 14, 2005) (expert could not rely on anonymous Internet postings because plaintiff failed to show experts in the relevant field reasonably relied on such postings).

---

shows that the alternative designs required both technical and design expertise. See, e.g., M. Zazula Dep. at 114 (he would have to perform tests to determine how long police fan would have kept engine cool), 117-18 (he would have to consider various factors in adding a police fan kit), 125-26, 135-37 (he would need to look at temperatures and materials to determine if dipstick would prevent fire). Furthermore, to the extent that Breen found that alternative designs were feasible, this is something that may be explored on cross-examination.

[2] The Yazdanis argue that Kerrigan supports Zazula's qualifications to offer opinions on alternative designs because the Kerrigan court found, while discussing Hammond v. International Harvest Co., 691 F.2d 646 (3d Cir. 1982), that a mechanical expert could testify about a standard product safety feature that had been removed by the manufacturer. See Response at 6-7; Kerrigan, 223 F. Supp. 2d at 636-37. The Hammond court, however, did not make any such findings about the expert in that case. See 691 F.2d at 652-63. There also has been no showing that the alternative designs proposed by Zazula were standard safety features removed by BMW.

2

2.	BMW's Motion in Limine to Preclude Evidence of the Recall of R1100RSL Model Motorcycles (doc. 24) is GRANTED in part and DENIED in part. The Yazdanis cannot present evidence of the 1997 recall as evidence of a defect in Yazdani's R1150 model motorcycle because the incidents related to the recall are not substantially similar to the incident here. See Berker v. Deere and Co., 60 F.3d 158, 162 (3d Cir. 1995) (plaintiff can introduce evidence of other accidents as direct proof of a design defect only if he demonstrates those incidents were "substantially similar"). The 2007 recall involved a different model motorcycle, the R1100 motorcycle, with a different alleged design defect. The R1100 motorcycle had a full front fairing, or a shell placed over the motorcycle frame, that could catch fire if the exhaust system's temperature rose considerably while the motorcycle was at a standstill. See Motion, Ex. C, 9/29/1997 Letter re: Recall Campaign at 1-2; Ex. B, Report of K. Breen at 8. Alternatively, Yazdani's motorcycle did not have a fairing, but rather an oil sight glass that allegedly could leak oil if the exhaust system overheated with the motorcycle in a standstill position. See Motion, Ex. A, Michael Zazula Report at 3-4. Evidence of this recall cannot be admitted to prove Yazdani's motorcycle was defective; any probative vale of this evidence is substantially outweighed by the risk of confusing the jury about the defective condition at issue here. See Fed. R. Evid. 403; Jordan v. General Motors Corp., 624 F. Supp. 72, 77 (E.D. La. July 18, 1985) (recall campaign involving different model year and distinctly different design defect irrelevant).

The Yazdanis, however, can present limited evidence related to the recall to show BMW had notice that the warnings in its rider manuals were potentially inadequate. Like the rider's manual provided with Yazdani's motorcycle, the rider's manual provided with the R1100 motorcycles warned "the rider not to leave the engine running unnecessarily when the motorcycle is stationary and to ride off immediately after starting." 9/29/1997 Letter re: Recall Campaign at 2;

3

compare Motion for Summary Judgment (doc. 15), Ex. C, Rider's Manual at Yazdani000950 ("Do not allow the engine to idle unnecessarily or for prolonged periods. –Risk of overheating or fire. Ride away immediately after starting the engine."). Nevertheless, BMW learned, after conducting an investigation of incidents involving the R1100 motorcycles, that some riders were running their motorcycles unattended at a standstill despite the warnings in the manual. See 9/29/1997 Letter re: Recall Campaign at 2. In response, BMW voluntarily mailed additional warnings, including a label that could be affixed to the motorcycle and an insert to the rider's manual, to R1100 motorcycle owners. See id. at 3. Given the similar warnings in the manuals provided with the R1100 and R1150 model motorcycles, the Yazdanis may reference the 1997 letter to establish that: (1) the R100 motorcycle had a warning in its rider's manual like the warning in the Rider's Manual with Yazdani's motorcycle,; (2) BMW knew riders of this motorcycle had left the motorcycle running at a standstill despite warnings about the risk of fire in the rider's manual; and (3) BMW responded by sending a label that could be affixed to the motorcycle and an insert. See In re Tylenol (Acetaminophen) Mktg., Sales Practices & Products Liab. Litig., No. 12-7263, 2016 WL 1569719, at *26 (E.D. Pa. Apr. 19, 2016) (notice may be shown by evidence of prior incidents under similar circumstances) (citing Gumbs v. Int'l Harvester, Inc., 718 F.2d 88, 97 (3d Cir. 1983)); Benedi v. McNeil-P.P.C., Inc., 66 F.3d 1378, 1386 (4th Cir. 1995) ("When prior incidents are admitted to prove notice, the required similarity of the prior incidents to the case at hand is more relaxed than when prior incidents are admitted to prove negligence."). To avoid any unfair prejudice and confusion, the Yazdanis shall be precluded from using the term "recall" and all references to that term shall be redacted from the 1997 letter. If BMW requests, I also shall provide an instruction limiting the jury's consideration of this evidence to the issue of notice. See Fed. R. Evid. 105.

3.  BMW's Motion in Limine to Preclude Certain Propositions Relating to Reliance on the Rider's Manual (doc. 25) is GRANTED for the reasons discussed in my May 12, 2016 Memorandum Opinion (doc. 54). Mr. Vigilante cannot testify that because second-hand users may never obtain the manual and users may not read all or parts of the manual, it was unreasonable for BMW to rely on its Rider's Manual. Such evidence has minimal relevance to this case, which involves a rider who possessed and read the Rider's Manual, and any relevance is substantially outweighed by the danger of confusing the jury on issues not in dispute. See Fed. R. Evid. 403.

4.  BMW's Motion in Limine to Preclude Certain Testimony of Plaintiffs' Expert William Vigilante, Jr. (doc. 26) is GRANTED. Because Vigilante does not have "specialized expertise" in motorcycle or vehicle design and has set forth alternative designs solely based on Zazula's opinions, which are inadmissible as discussed above, he is precluded from presenting any opinions about alternative designs for the motorcycle. See Motion, Ex. C, W. Vigilante, Curriculum Vitae, Ex. B, W. Vigilante Dep. at 26-27, 88; Response (doc. 42) at 6 (Vigilante "does not plan to offer any independent opinion on the proposed alternative design proffered by Michael Zazula"); see also supra ¶ 1; In re Paoli, 35 F.3d at 741; Kerrigan, 223 F. Supp. 2d at 635.

5.  BMW's Motion in Limine to Preclude Plaintiffs' Use of the Consumer Expectations Test (doc. 27) is GRANTED. The consumer expectations test is inappropriate because the fire hazard posed by the motorcycle's alleged defective design is beyond the everyday understanding of the ordinary consumer.[3] See Tincher v. Omega Flex, Inc., 104 A.3d 328, 388

---

[3] The Yazdanis argue that the consumer expectations test is appropriate because "[a]n average consumer would not expect *any* engine, left idling, to overheat to the point where it catches fire." Response (doc. 43) at 11 (italics in Response). This case, however, does not involve a typical engine; rather, it concerns an air-cooled motorcycle engine. This product, even if used as intended, could "cause injury in a way that does not engage its ordinary consumers' reasonable minimum assumptions about safe performance." Soule, 882 P.2d at 308.

5

(Pa. 2014) (consumer expectations test should not be applied to a product of relatively complex design whose danger is "outside the ordinary consumer's contemplation"); Soule v. Gen. Motors Corp., 882 P.2d 298, 308 (Ca. 1994) ("consumer expectations test is reserved for cases in which the *everyday experience* of the product's users permits a conclusion that the product's design violated *minimum* safety assumptions, and is thus defective *regardless of expert opinion about the merits of the design*") (italics in original); see also Motion, Ex. B, W. Vigilante Report at 13 ("Most people would not be expected to appreciate or anticipate the chain events and characteristics of the BMW R1150 R motorcycle that creates the fire potential without adequate warning.").

6. BMW's Motion in Limine to Preclude Evidence of Other Incidents (doc. 28) is DENIED in part and GRANTED in part. The Yazdanis are precluded from presenting evidence of reported incidents involving different model motorcycles, as well as any unknown "R" series model motorcycles, because they have failed to establish these motorcycles are substantially similar to Yazdani's R1150 model motorcycle.[4] See Response (doc. 47) at 10-14, Exs. O-W; see also supra at ¶ 2. The Yazdanis also cannot present evidence of reported incidents involving R1150 model motorcycles where the incidents did not involve substantially similar circumstances, i.e., there is no report that the motorcycle caught fire after the engine was running at a standstill.

---

[4] The Yazdanis seek to present evidence of an incident involving a R1200 model motorcycle. See Response, Ex. O. They claim the R1200 model is substantially similar to the R1150 model because they both have an air-cooled engine, manual chokes, and an oil sight glass. The Yazdanis, however, do not cite to any evidence to support their claim. See Response at 10-11. The Yazdanis also seek to present evidence of incidents involving R1100 model motorcycles. See Response, Exs. P-W. Those models, as previously explained, are not substantially similar to Yazdani's R1150R motorcycle. See id., Exs. P-W; supra at ¶ 2. Further, although the Yazdanis argue that BMW has precluded them from satisfying the foundational requirements with regard to the six unknown "R" series motorcycles, they have the burden of establishing substantial similarity and could have pursued additional discovery to investigate these claims. See Response at 13-14; Berker, 60 F.3d at 162.

See Response, Exs. G, N.

The Yazdanis can present evidence about reported incidents involving R1150 model motorcycles that caught fire after the engine was left running at a standstill for the purpose of showing Yazdani's R1150 motorcycle had a defective design. See Response, Exs. E, F, G, I, J, K, L, M; Barker, 60 F.3d at 162-63 (jury may infer from presence of other substantially similar accidents that design defect existed). The Yazdanis, however, are limited to offering evidence that BMW received eight reports of such fires and the dates on which BMW received such reports. They cannot explore all of the underlying facts related to such incidents because any probative value related to these facts is substantially outweighed by risks of confusing the jury and wasting time. See Fed. R. Evid. 403. Furthermore, because all but one of the reports occurred after Yazdani's motorcycle was manufactured, only that incident is relevant to show BMW had notice of the allegedly defective condition. See Response, Ex. K.

7. BMW's Motion in Limine to Preclude Evidence of a Lack of Other Similar Incidents (doc. 29) is DENIED. Because the Yazdanis are not seeking to introduce evidence of a lack of similar accidents in other motorcycles, BMW's motion to preclude such evidence is denied as moot. See Response (doc. 44) at 4. The Yazdanis' experts, Zazula and Vigilante, also may opine that the R1150 model motorcycle has an atypical and unique design. Zazula may offer such testimony based on his experience with different types of motorcycles, see M. Zazula Dep. at 7-8, 41, and Vigilante may provide such testimony based on his review of manuals and warnings provided with other motorcycles, see W. Vigilante Dep. at 99-100.[5] BMW may cross-examine

---

[5] BMW argues that the Yazdanis must lay a foundation, consisting of a comprehensive database of claims and lawsuits related to other motorcycles, before Zazula and Vigilante can opine about the atypical and unique design of the R1150 motorcycle. See Motion at 3-5. Such a foundation is required only where a defendant is seeking to show that its products have not been

both experts as to whether they failed to consider certain motorcycles, or a sufficient number of motorcycles, in forming their opinions, and any such failures shall go the weight of their testimony.

8. BMW's Motion in Limine to Preclude Evidence of Replacement Cost Value as the Measure of Plaintiffs' Real Property Damages (doc. 30) is DENIED. The Yazdanis are entitled to present evidence of their repair costs. The jury, however, will be instructed that the Yazdanis are entitled to such damages only if: (1) they are reasonable, i.e., they restored the home to its pre-loss condition; and (2) they do not exceed the pre-loss fair market value of the home. See Yazdanis' Motion in Limine to Preclude Evidence of and/or Related to "Depreciation" and/or "Actual Cash Value" (doc. 32) at 4; Pa. Dep't of Gen. Serv. v. U.S. Mineral Products Co., 898 A.2d 590, 596 (Pa. 2006); Lobozzo v. Adam Eidemiller, Inc., 263 A.2d 263 A.2d 432, 369 (Pa. 1970); see also Pa. S.S.J.I. (Civ.) § 7.150 ("If the property was not a total loss, damages are measured by [either] [the difference in the value before and after the harm] or [the reasonable cost of repairs].").

9. The Yazdanis' Motion in Limine to Preclude Evidence of and/or Related to "Depreciation" and/or "Actual Cash Value" (doc. 32) is GRANTED. BMW is precluded from presenting evidence of depreciation and "actual cash value" because this evidence has minimal, if any, relevance to the Yazdanis' damages, which are limited to reasonable repair costs that do not exceed the fair market value of the property before the accident.[6] See supra ¶ 8. Further, any relevance is substantially outweighed by the dangers of unfair prejudice and confusion about the manner of computing damages. Fed. R. Evid. 403.

---

involved in other accidents. See Forrest v. Beloit Corp., 424 F.3d 344, 353-62 (3d Cr. 2005). Zazula and Vigilante are not offering such testimony.

[6] "Actual cost value" refers to the cost of replacing property minus depreciation. http://www.merriam-webster.com/dictionary/actual+cash+value (last visited 5/19/2016).

10. The Yazdanis' Motion in Limine to Preclude Any Reference to or Mention of Insurance or "Allstate" (doc. 31) is DENIED. Although the Yazdanis' insurance agreement with Allstate cannot be admitted for the purposes of showing liability, it may be admitted for other purposes, such as proving witness bias, prejudice, ownership or control. Fed. R. Evid. 411. Because the Yazdanis have named several Allstate employees as witnesses, BMW may cross-examine these witnesses about their relationship with Allstate and Allstate's role to explore possible bias. See Pl.'s Pre-Trial Memo. (doc. 59) at 6, 9; Fed. R. Evid. 411 (evidence of insurance may be admitted to prove witness bias); Charter v. Chleborad, 551 F.2d 878, 878 (8th Cir. 1977) (fact that defendant's insurer employed witness "was clearly admissible to show possible bias of that witness"); Allstate Ins. Co. et. Al, v. Anderson and Patterson, E.D. Pa., No. 15-2651, Plaintiff's Br. in Support of Resp. to Def. Motion in Limine to Preclude Evid. of Ins. (doc. 71) at 1-4. BMW also may raise this issue in examining any exhibits created by Allstate. Further, if the Yazdanis deny any of the allegations in the complaint, BMW may impeach them with the complaint which was verified by Allstate. See Response (doc. 38), Ex. A, Complaint, Verification; see also Fed. R. Evid. 411 (evidence of insurance is admissible to show ownership or control). If requested by the Yazdanis, I shall instruct the jury that evidence of the Yazdanis' insurance relationship with Allstate, and Allstate's payment of their damages, is admissible only to establish bias, prejudice, or control. See Fed. R. Evid. 105.

11. The Yazdanis' Motion in Limine to Preclude Defendant from Offering Evidence or Testimony on the Subject Motorcycle's Compliance with Government and/or Industry Standards (doc. 34) is DENIED as moot because BMW has agreed to withdraw the two exhibits challenged by the Yazdanis. See BMW's Response (doc. 36) at 1 (BMW "agrees to withdraw the two challenged exhibits").

12. The Yazdanis' Motion in Limine to Preclude Defendant's Expert Kevin C. Breen (doc. 35) is DENIED. Breen's qualifications and opinions satisfy the liberal requirements for admission of expert testimony under Federal Rules of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 589-91 (1993). See Motion, Ex. D, K. Breen Report; 5/12/2016 Memo. Op. (doc. 54) at 4-5. The Yazdanis' claims that Breen failed to examine motorcycles with the same alleged design defect can be adequately explored on cross-examination and impacts the weight of his opinions, not admissibility. Further, BMW has agreed that Breen will not reference any government and industry standards because it is withdrawing those exhibits. See Reply (doc. 37) at 15-16. Breen also properly considered the actual design of the motorcycle, looking at its inclusion of both an air-cooled engine and an oil sight glass. See Breen Report at 9 ("the overall configuration of the subject motorcycle, including an air-cooled engine and oil sight glass, is an appropriate design and does not pose an unreasonable risk, is not dangerous or unsafe, when the vehicle is used in an intended manner"). In addition, Breen may opine about Yazdani's use of the motorcycle because this evidence is relevant to BMW's defense that Yazdani failed to use the motorcycle in accordance with the warnings in the Rider's Manual.

BY THE COURT:

/s/ Timothy R. Rice

TIMOTHY R. RICE
United States Magistrate Judge

ENTERED
MAY 26 2016